**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| BRIDGES, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:23-cv-01568-RDM |
| | ) | |
| ACCENTURE FEDERAL SERVICES, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**FEDERAL DEFENDANTS' MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS COUNT TWO OF THE COMPLAINT**

## **TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................... 1

BACKGROUND ........................................................................................................... 3

1. THE THRIFT SAVINGS PLAN ........................................................................... 3

2. FIDUCIARY RESPONSIBILITIES...................................................................... 4

3. THE BOARD'S CONSOLIDATION OF RECORDKEEPING FUNCTIONS
   INTO A PERFORMANCE-BASED CONTRACT WITH ACCENTURE
   FEDERAL SERVICES............................................................................................ 7

    A.    Accenture's Contractual Responsibilities for Managing the TSP ...................... 8

    B.    The Board's Monitoring Responsibilities......................................................... 10

4. PLAINTIFFS' CLAIMS ....................................................................................... 11

ARGUMENT ................................................................................................................ 13

I. PLAINTIFFS' CLAIMS AGAINST THE BOARD SHOULD BE DISMISSED
   FOR LACK OF SUBJECT MATTER JURISDICTION UNDER FED. R. CIV.
   P. 12(b)(1) ............................................................................................................. 13

    A.    The Fed. R. Civ. P. 12(b)(1) Legal Standard .................................................. 13

    B.    Plaintiffs Identify No Waiver of Sovereign Immunity that Would Permit
       Monetary Relief Against the Board; to the Contrary, FERSA Expressly
       Precludes Such Relief. ..................................................................................... 14

    C.    Plaintiffs Lack Standing to Assert Claims for Declaratory and Injunctive
       Relief Against the Board................................................................................... 15

        1.    There is no Certainly Impending Injury Which Warrants
           Injunctive Relief................................................................................... 15

        2.    There is No Immediate Controversy Which Warrants Declaratory
           Relief..................................................................................................... 19

II. PLAINTIFFS FAIL TO STATE A PLAUSIBLE CLAIM THAT THE BOARD
    BREACHED A FIDUCIARY DUTY TO MONITOR ............................................... 20

    A.    The Fed. R. Civ. P. 12(b)(6) Legal Standard .................................................. 20

    B.    Plaintiffs Fail to Meet Their Threshold Burden to State a Plausible
       Claim................................................................................................................ 22

    C.    Deficient Oversight Cannot Be Inferred from Accenture's and Alight's
       Alleged Poor Customer Service....................................................................... 23

D.    There Is No Plausible Claim That the Board Should Be Held Jointly and
      Severally Liable .............................................................................................. 25

CONCLUSION.............................................................................................................................. 27

## TABLE OF AUTHORITIES

<u>**CASES**</u>

*Afanasieva v. Wash. Metro. Area Transit Auth.*,
　588 F. Supp. 3d 99 (D.D.C. 2022) ...................................................................... 21

*Allen v. Wright*,
　468 U.S. 737 (1984) ............................................................................................. 18

*Altvater v. Freeman*,
　319 U.S. 359 (1943) ............................................................................................. 19

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009) ..................................................................................... *passim*

*Barchock v. CVS Health Corp.*,
　886 F.3d 43 (1st Cir. 2018) ................................................................................. 24

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2007) ................................................................................. 20, 21, 26

*Bellanger v. Health Plan of Nev.*,
　814 F. Supp. 914 (D. Nev. 1992) ........................................................................ 17

*Browning v. Clinton*,
　292 F.3d 235 (D.C. Cir. 2002) ...................................................................... 21, 23

*Busby v. Capital One, NA*,
　772 F. Supp. 2d 268 (D.D.C. 2011) .................................................................... 21

*C.F. Folks, Ltd. v. DC Jefferson Bldg., LLC*,
　308 F. Supp. 3d 145 (D.D.C. 2018) .................................................................... 20

*Carney v. Adams*,
　592 U.S. ---, 141 S. Ct. 493, (2020) ............................................................. 16, 17

*Cassell v. Vanderbilt Univ.*,
　285 F. Supp. 3d 1056 (M.D. Tenn. 2018) ........................................................... 22

*Chao v. Day*,
　436 F.3d 234 (D.C. Cir. 2006) .............................................................................. 4

*City of Los Angeles v. Lyons*,
　461 U.S. 95 (1983) ......................................................................................... 16, 18

*Coburn v. Evercore Trust Co., N.A.*,
　844 F.3d 965 (D.C. Cir. 2016) ............................................................................ 21

*Conley v. Gibson*,
  355 U.S. 41 (1957) ............................................................................................. 11

*Dep't of the Army v. Blue Fox, Inc.*,
  525 U.S. 255 (1999) ........................................................................................... 14

*DiFelice v. U.S. Airways*,
  497 F.3d 410 (4th Cir. 2007) ............................................................................. 24

*EEOC v. St. Francis Xavier Parochial Sch.*,
  117 F.3d 621 (D.C. Cir. 1997) ........................................................................... 21

*Electronic Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*,
  878 F.3d 371 (D.C. Cir. 2017) ........................................................................... 16

*Fed. Express Corp. v. Air Line Pilots Ass'n*,
  67 F.3d 961 (D.C. Cir. 1995) ............................................................................. 19

*Fifth Third Bancorp v. Dudenhoeffer*,
  573 U.S. 409 (2014) ........................................................................................... 24

*ForUsAll, Inc. v. U.S. Dep't of Labor*,
  No. 22-CV-1551 (CRC), 2023 WL 5559682 (D.D.C. Aug. 29, 2023) ..................... 13, 18, 20

*Guardsmark, Inc. v. BlueCross and BlueShield of Tenn.*,
  169 F. Supp. 2d 794 (W.D. Tenn. 2001) ............................................................... 5

*Hemp Indus. Ass'n v. DEA*,
  36 F.4th 278 (D.C. Cir. 2022) ............................................................................ 16

*IT Corp. v. Gen'l Am. Life Ins. Co.*,
  107 F.3d 1415 (9th Cir. 1997) ............................................................................. 5

*Kareem v. Haspel*,
  986 F.3d 859 (D.C. Cir. 2021) ..................................................................... 16, 20

*Leventhal v. MandMarblestone Grp. LLC*,
  No. 18-CV-2727, 2019 WL 1953247 (E.D. Pa. May 2, 2019) ............................... 5

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ..................................................................................... 13, 15

*M.J. v. Dist. of Columbia*,
  401 F. Supp. 3d 1 (D.D.C. 2019) ....................................................................... 13

*Mertens v. Hewitt Associates*,
  508 U.S. 248 (1993) ............................................................................................ 5

*Nat'l Wrestling Coaches Ass'n*,
   366 F.3d 930 (D.C. Cir. 2004) ........................................................................ 19

*Neil v. Zell*,
   677 F. Supp. 2d 1010 (N.D. Ill. 2010) ............................................................ 22

*O'Shea v. Littleton*,
   414 U.S. 488 (1974) ......................................................................................... 16

*RSM Production v. Freshfields Bruckhaus Deringer*,
   682 F.3d 1043 (D.C. Cir. 2012) ...................................................................... 21

*Salahuddin v. Cuomo*,
   861 F.2d 40 (2d Cir. 1988) .............................................................................. 11

*Sandoval v. U.S. Dep't of Justice*,
   322 F. Supp. 3d 101 (D.D.C. 2018) ................................................................ 16

*Santiago v. Univ. of Miami*,
   No. 1:20-cv-21784-GAYLES/LOUIS, 2021 WL 1173164 (S.D. Fla. March 1, 2021)......... 22

*Simon v. Eastern Kentucky Welfare Rights Org.*,
   426 U.S. 26 (1976) ........................................................................................... 19

*Stirrup v. Biden*,
   ---F. Supp. 3d---, 2023 WL 2585822 (D.D.C. March 21, 2023) ...................... 16

*Sossamon v. Texas*,
   563 U.S. 277 (2011) ......................................................................................... 14

*Thompson v. Sessions*,
   No. 16-3 (RDM), 2018 WL 4680201 (D.D.C. Sept. 27, 2018) .............. 16, 17, 18

*Whitmore v. Arkansas*,
   495 U.S. 149 (1990) ......................................................................................... 16

## U.S. CONSTITUTION

U.S. Const. art. III, § 2, cl. 1 .......................................................................... 15

## STATUTES

5 U.S.C. § 2105 ...................................................................................................... 3

5 U.S.C. § 8331 ...................................................................................................... 3

5 U.S.C. § 8351 .................................................................................................. 1, 3

5 U.S.C. § 8431-8440f ................................................................................... *passim*

5 U.S.C.§ 8440a-8440e .......................................................................................... 3

5 U.S.C. § 8472 ............................................................................................... 3, 7

5 U.S.C. § 8474 .................................................................................................. 3

5 U.S.C. § 8477 .......................................................................................... *passim*

28 U.S.C. § 2201(a) ........................................................................................... 20

29 U.S.C. § 1002(21)(A) ..................................................................................... 5

29 U.S.C. § 1104(a)(1) ........................................................................................ 6

29 U.S.C. § 1105(a) ............................................................................................. 6

Federal Employees' Retirement Systems Act of 1986 ("FERSA"),
    Pub. L. No. 99-335, 100 Stat. 514 (1986) ................................................... 1

## RULES

Fed. R. Civ. P. 8 .............................................................................................. 11

Fed. R. Civ. P. 12 ..................................................................................... *passim*

## ADMINISTRATIVE AND EXECUTIVE MATERIALS

5 C.F.R. Part 1655 ............................................................................................. 4

5 C.F.R. § 1650.11 ............................................................................................. 4

5 C.F.R. § 1650.24 .......................................................................................... 4, 9

5 C.F.R. § 1650.31 ............................................................................................. 3

5 C.F.R. § 1650.32 ............................................................................................. 3

5 C.F.R. § 1650.41 .......................................................................................... 4, 9

5 C.F.R. § 1650.42 .......................................................................................... 4, 9

5 C.F.R. § 1651.2 ............................................................................................... 4

5 C.F.R. § 1655.9 ............................................................................................... 4

5 C.F.R. § 1655.10 .......................................................................................... 4, 9

29 C.F.R. § 2509.75-8 .................................................................................. 10, 25

48 C.F.R. § 2.101 .............................................................................................. 8

48 C.F.R. § 37.602(b)(1)............................................................................................ 9

48 C.F.R. § 37.603 ................................................................................................... 10

131 Cong. Rec. S10417-02, 1985 WL 717661 (July 30, 1985) (statement of Sen. Roth) .......... 6

**LEGISLATIVE MATERIALS**

H.R. Rep. No. 99-606 (1986), *reprinted in* 1986 U.S.C.C.A.N. 1508 ....................................... 6

S. Rep. No. 99-166 (1985), *as reprinted in* 1986 U.S.C.C.A.N. 1405, 1477 ............................. 6

**OTHER AUTHORITIES**

FRTIB 2017-2021 Strategic Plan Close Out Report ("Close Out Report"),
   https://www.frtib.gov/pdf/reading-room/StratPlan/FRTIBStrategicPlanCloseoutReport-
   2017-2021.pdf............................................................................................................. 7

FRTIB, Contract
   https://www.frtib.gov/pdf/reading-room/FOIA/frequent/TIB-2021-C-
   0003%20Accenture%20Federal%20Services.pdf ........................................................ 8, 19, 25

FRTIB, Minutes of the Meeting of the Board Members (Aug. 24 2022)
   https://www.frtib.gov/meeting_minutes/2022/2022Aug.pdf................................................. 26

FRTIB, Minutes of the Meeting of the Board Members (June 28, 2022)
   https://www.frtib.gov/meeting_minutes/2022/2022June.pdf ................................................ 26

SAM.gov, Recordkeeping Services Acquisition, Notice ID TIB-2017-RFP-0001-RKSA,
   Statement of Objectives (June 28, 2018)
   https://sam.gov/opp/f706db43904cecea0e2107a8b38fc985/view#contact ................ 9, 10, 19

## INTRODUCTION

This case concerns the alleged failure by defendants Accenture Federal Services

("Accenture" or "AFS") and Alight Solutions LLC ("Alight") to properly disburse Thrift

Savings Plan ("TSP") funds to plaintiffs, who are participants in or beneficiaries of the TSP, a

federal retirement plan that serves more than six million people and manages approximately

$780 billion in assets.  The TSP was created by the Federal Employees' Retirement Systems

Act of 1986 ("FERSA"), Pub. L. No. 99-335, 100 Stat. 514 (codified at 5 U.S.C. §§ 8351 and

8401 *et seq.*).  It is overseen by a five-member Federal Retirement Thrift Investment Board and

an Executive Director (together "FRTIB" or "Board"),[1] who as fiduciaries establish policies

for the investment and administration of the TSP.  As modernization of the TSP system

became necessary due to its increasing technological complexity, the Board contracted out TSP

operations in 2020 to Accenture.  Together with its subcontractor Alight, Accenture was

obligated to establish and manage a new TSP system and administer the TSP's day-to-day

operations.

The Class Action Complaint ("Complaint") alleges that Accenture and Alight

mismanaged plaintiffs' TSP disbursement requests, resulting in lengthy processing delays,

unwarranted penalties and deductions, a failure to disburse proceeds altogether, and other

harms.  Plaintiffs seek various forms of monetary relief, as well as declaratory judgment and

permanent injunction. Of the six Counts in the Complaint, only one, Count Two, is directed

against the Board.  But the Court lacks subject matter jurisdiction under Fed. R. Civ. P.

---

[1] At times, "FRTIB" as used herein refers to the Federal Retirement Thrift Investment Board more broadly as an independent Federal agency within the Executive Branch of the Government.  Defendants Ravindra Deo, Leona Bridges, Dana K. Bilyeu, Stacie Olivares, and Mike Gerber are the five Board members, and defendant Deo is the Executive Director. The Complaint misspells Leona Bridges's name as "Leona Bridge."

12(b)(1) to award any relief against the Board.  The United States has not waived its sovereign immunity for any form of monetary relief against the Board -- and FERSA affirmatively highlights the absence of any such waiver.

Furthermore, plaintiffs lack standing to pursue declaratory or injunctive relief against the Board because they have not alleged any "certainly impending" injury: they have presented no facts showing that they will likely conduct future TSP transactions that are likely to be mishandled by Accenture and Alight, and that the Board is likely to monitor the handling of those transactions inadequately.  Given Accenture's and Alight's direct responsibility for the actions alleged, it would be pure speculation to conclude that the Board's alleged failure to monitor caused plaintiffs' injuries, or that injunctive relief against the Board could remedy them.  In fact, plaintiffs seek injunctive relief only against Accenture and Alight in the single count of the Complaint against the Board, thereby implicitly acknowledging that Accenture and Alight are the direct cause of their injuries and the proper source of redress.  Count Two of the Complaint should therefore be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

Plaintiffs have also failed to state a plausible claim for relief against the Board, and Count Two of the Complaint should therefore be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).  Plaintiffs broadly contend that the Board breached its fiduciary duty to oversee Accenture and Alight.  However, they fail to allege a single fact explaining *how* the Board breached its fiduciary duty to monitor, or what additional monitoring measures the Board should have taken to cure the alleged issues.  Indeed, the facts indicate that the Board is rigorously and diligently monitoring the performance of Accenture and Alight.  And deficient oversight cannot properly be inferred from the alleged poor customer service plaintiffs received, because the test of prudence focuses on a fiduciary's conduct, not on results.

For these reasons, plaintiffs' single count against the Board should be dismissed.

## **BACKGROUND**

## 1.    **THE THRIFT SAVINGS PLAN**

FERSA established the TSP, a defined contribution retirement savings plan for federal government employees and uniformed services members that provides income tax deferral on employee contributions and related earnings.  5 U.S.C. §§ 8351, 8437; Complaint ("Compl.") (ECF No. 1) ¶¶ 1, 121.  The TSP is available to federal and Postal employees, members of the uniformed services, members of Congress and the Judiciary, and certain Congressional employees, among others.  5 U.S.C. §§ 2105, 8331, 8351, 8440a – 8440e.

To oversee the TSP, FERSA established the Federal Retirement Thrift Investment Board, an Executive Branch agency overseen by a five-member Board and Executive Director. 5 U.S.C. §§ 8472(a), (b), 8474; Compl. ¶¶ 2, 126-27.  The Board members' responsibilities include "establish[ing] policies for – (A) the investment and management of the Thrift Savings Fund; and (B) the administration of" provisions in 5 U.S.C. §§ 8431-8440f governing the TSP. 5 U.S.C. § 8472(f); Compl. ¶ 128.  The Executive Director must carry out the policies established by the Board, invest and manage the TSP, and administer the provisions of FERSA regarding the governance of the TSP.  5 U.S.C. § 8474; Compl ¶ 131.

TSP participants are permitted to withdraw funds from their accounts for designated reasons.  Participants who are still active federal civilian workers or members of the uniformed services may make withdrawals if: (1) they meet requirements of showing hardship ("Hardship Withdrawals"), 5 U.S.C. § 8433(h)(1)(B); 5 C.F.R. §§ 1650.32; Compl. ¶¶ 4, 137; or (2) they are older than 59.5 years of age ("Age-Based In-Service Withdrawals"), 5 U.S.C. § 8433(h)(1)(A); 5 C.F.R. §§ 1650.31; Compl. ¶¶ 4, 137.  Participants who have separated from

3

federal service or the uniformed services may make "Post-Employment Withdrawals" from their TSP accounts.[2]  5 U.S.C. § 8433(a); 5 C.F.R. § 1650.11; Compl. ¶¶ 5, 137, 144.  FERSA also allows participants to designate beneficiaries who will receive the money in their TSP accounts after their deaths ("Death Benefits").  5 U.S.C. § 8433(e)(2); 5 C.F.R. § 1651.2; *see* Compl. ¶¶ 6, 137, 141.  In addition, TSP participants may borrow money from their accounts, which results in a deduction of money from their accounts, bearing interest and requiring regular payments similar to any ordinary interest-bearing consumer loan ("TSP Loan"), 5 U.S.C. § 8433(g)(1); 5 C.F.R. Part 1655; Compl. ¶¶ 7, 137, except that all TSP Loan interest and principal payments are deposited back into the participant's TSP account.  *See* 5 C.F.R. § 1655.9; Compl. ¶ 7.  Participants are required to submit requests for Post-Employment Withdrawals, Age-Based In-Service Withdrawals, Financial Hardship Withdrawals, and Loans to the TSP recordkeeper for approval "in the form and manner prescribed by the TSP recordkeeper."  *See* 5 C.F.R. §§ 1650.24, 1650.41, 1650.42, 1655.10, respectively.

## 2.    FIDUCIARY RESPONSIBILITIES

FERSA designates two types of TSP fiduciaries: (i) named fiduciaries, who are statutorily identified as fiduciaries; and (ii) functional fiduciaries, who become fiduciaries by exercising certain types of control or discretion over the TSP.  *See* 5 U.S.C. § 8477(a)(3).  The Board members and Executive Director are named fiduciaries.  5 U.S.C. § 8477(a)(3)(A), (B).

FERSA describes two types of functional fiduciaries.  *See Chao v. Day*, 436 F.3d 234, 235 (D.C. Cir. 2006).  The first category consists of "any person who has or exercises discretionary authority or discretionary control over the management or disposition of the

_____

[2] What the Complaint calls "non-hardship active withdrawals" and "out of service withdrawals," *see* Compl. ¶¶ 4-5, are referred to, respectively, as "age-based in-service withdrawals" and "post-employment withdrawals" in the regulations.

assets of the Thrift Savings Fund." 5 U.S.C. § 8477(a)(3)(C).  The second category consists of "any person who, with respect to the Thrift Savings Fund, is described in section 3(21)(A) of the Employee Retirement Income Security Act of 1974 [ERISA] (29 U.S.C. 1002(21)(A)) . . . ."  5 U.S.C. § 8477(a)(3)(D).  That ERISA provision in turn states that "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretional authority or control respecting management of such plan or exercises *any authority or control respecting management or disposition of its assets*, . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."  29 U.S.C. § 1002(21)(A) (emphasis added).

Fiduciaries' responsibilities include "proper management, administration, and investment of [plan] assets, the maintenance of proper records, the disclosure of specified information, and the avoidance of conflicts of interest."  *Mertens v. Hewitt Associates*, 508 U.S. 248, 251-52 (1993); *see* 5 U.S.C. § 8477(a)(3)(D); 29 U.S.C. § 1002(21)(A).  "When the courts distinguish fiduciary duties from purely ministerial ones, they look to more than job titles or contract terms."  *Guardsmark, Inc. v. BlueCross and BlueShield of Tenn.*, 169 F. Supp. 2d 794, 800 (W.D. Tenn. 2001).  The "definition of a fiduciary . . . turns on function rather than form."  *Id.* at 799.  For the courts, "[t]he issue is not just how the duties are characterized, but what they are."  *IT Corp. v. Gen'l Am. Life Ins. Co.*, 107 F.3d 1415, 1419 (9th Cir. 1997).  Hence, for example, merely "putting the magic words in the contract, 'purely ministerial duties,' does not avoid fiduciary responsibility, if the characterization, 'purely ministerial duties,' is not correct."  *Id.*  "[A]uthority and control over plan assets may make [an entity] a fiduciary."  *Id.* at 1420; *see also Leventhal v. MandMarblestone Grp. LLC,* No. 18-CV-2727, 2019 WL 1953247, at *5 (E.D. Pa. May 2, 2019) (holding that plaintiff adequately alleged

5

fiduciary status of a defendant, in part, because the defendant "had control of the Plan accounts so as to distribute the Plan funds").

FERSA requires a fiduciary, whether named or functional, to "discharge his responsibilities with respect to the Thrift Savings Fund . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent individual acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like objectives . . . ."[3]  5 U.S.C. § 8477(b)(1)(B).  It further permits any participant or beneficiary to bring suit "to enjoin any act or practice" that violates this fiduciary duty of prudence and "to obtain any other appropriate equitable relief" to redress such violations.  5 U.S.C. § 8477(e)(3)(B).

In addition, FERSA authorizes joint and several liability among fiduciaries under limited circumstances: a fiduciary "shall be jointly and severally liable . . . for breach of fiduciary duty . . . by another fiduciary only if . . . (ii) by the fiduciary's failure to comply with subsection (b) in the administration of the fiduciary's specific responsibilities which give rise to fiduciary status, the fiduciary has enabled such other fiduciary to commit such a breach; or

---

[3]  FERSA's duty of prudence is identical to the duty of prudence articulated in ERISA, 29 U.S.C. § 1104(a)(1).  FERSA's legislative history indicates that FERSA fiduciary responsibilities are "similar to those required under ERISA."  *See* H.R. Rep. No. 99-606, at 138 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 1508, 1521; 131 Cong. Rec. S10417-02, 1985 WL 717661, at *104 (daily ed. July 30, 1985) (statement of Sen. Roth) (stating that the "Board must meet the same fiduciary standards as officials of private plans do under ERISA"); S. Rep. 99-166, at 72 (1985), *as reprinted in* 1986 U.S.C.C.A.N. 1405, 1477 ("The committee designed the system to parallel private sector practice where possible but took into account the special political and economic considerations presented by a large scale thrift plan for the Federal retirement system.  To the extent possible, the Federal Retirement Thrift Investment Management System meets the requirements of the Employee Retirement Income Security Act of 1974 (ERISA).").  Because of the similarity between ERISA and FERSA, Congress gave the Secretary of Labor the authority to issue regulations construing FERSA's fiduciary duty provisions.  5 U.S.C. § 8477(f).

6

(iii) the fiduciary has knowledge of a breach by such other fiduciary, unless the fiduciary

makes reasonable efforts under the circumstances to remedy the breach."  5 U.S.C. §

8477(e)(D)(ii), (iii).

**3.     THE BOARD'S CONSOLIDATION OF RECORDKEEPING FUNCTIONS
        INTO A PERFORMANCE-BASED CONTRACT WITH ACCENTURE
        FEDERAL SERVICES**

        Until recently, the Board's information technology (IT) architecture dated back to 2003

and presented infrastructure and security deficits.  *See* FRTIB 2017-2021 Strategic Plan Close

Out Report at 5 ("Close Out Report") [4].  After considerable analysis, the Board decided to

replace its existing IT platform and pivot from owning and maintaining recordkeeping,

financial systems, and related IT systems to outsourcing these services.  Close Out Report at 5;

Compl. ¶ 175.  The Board determined that doing so would allow the agency to leverage

industry best practices for technology and recordkeeping and allow it to focus more on

participant needs.  *See* Compl.  ¶¶ 175, 187.  The Board made this determination under its

authority "to take such action as the Board considers appropriate to carry out the provisions of"

the TSP.  *See* 5 U.S.C. § 8472(g)(1)(B), (D).

        Hence, the Board transitioned from owning IT equipment and managing multiple

service contracts supporting recordkeeping functions to consolidating all recordkeeping

functions into a performance-based contract with a single provider of retirement services that

would own and operate all IT infrastructure and manage all recordkeeping and service delivery

functions.  *See* Compl.  ¶¶ 10, 175, 180-81, 186.  This single contract combined all business

processes, services, and supporting IT so as to allow for the streamlined management of all

---

[4] The Close Out Report is available at https://www.frtib.gov/pdf/reading-
room/StratPlan/FRTIBStrategicPlanCloseoutReport-2017-2021.pdf.

retirement services delivered to TSP participants. *Id.* ¶¶ 180-81, 186, 188-92. In November 2020, the Board awarded the contract to defendant Accenture, *id.* ¶ 185, which would "reimagine retirement services," *id.* ¶ 188, add new functions to the TSP, *id.*, provide TSP participants with a modern, flexible, and secure platform, *id.* ¶ 190, and create functional communication platforms, *id.* ¶ 192. The TSP's current recordkeeping system —along with all the policies and processes associated with it — has been designed, implemented, and managed by Accenture in partnership with Alight to fulfill the objectives of the performance-based contract that the Board awarded to Accenture. *Id.* ¶¶ 189-194.

### A.    Accenture's Contractual Responsibilities for Managing the TSP

The Board "[h]ired AFS and Alight to [b]uild, [i]mplement, and [m]anage the [n]ew TSP [s]ystem for TSP [p]articipants." Compl. at 40 (heading). "The Contract 'encompasses everything from managing the TSP call centers and software that process participants' transactions to improving the plan's cybersecurity posture and IT infrastructure.'" *Id.* ¶ 189. The contract further requires that, "[i]ndependently and not as an agent of the Government, [Accenture] shall furnish all the necessary services, qualified personnel, material, equipment, and facilities, not otherwise provided by the Government as needed to perform the Recordkeeping Services . . . ." *Id.* ¶ 200; Contract[5] at C.1.

The contract between the Board and Accenture is "performance-based," which means that it is "structured around the results to be achieved as opposed to the manner by which the work is to be performed." *See* 48 C.F.R. § 2.101. With performance-based acquisitions, the government does not develop prescriptive requirements dictating how the contractor must

---

[5] The Contract is available at https://www.frtib.gov/pdf/reading-room/FOIA/frequent/TIB-2021-C-0003%20Accenture%20Federal%20Services.pdf.

fulfill the contract's objectives.  *See* 48 C.F.R. § 37.602(b)(1) ("Agencies shall, to the maximum extent practicable . . . describe the work in terms of the required results rather than 'how' the work is to be accomplished . . . .").  Instead, the Board developed a high-level Statement of Objectives[6] that describes what the government is trying to achieve by means of the contract.  The advantage of this approach is that it gives the contractor flexibility and discretion to design and implement systems, policies, practices, and procedures that achieve the government's objectives in an agile, cost-effective way that promotes consistency with standard industry practices.  *See* Compl. ¶¶ 173, 175; *see also* Statement of Objectives at 3, 6.

As set forth in the Statement of Objectives, the Board expected Accenture to "provide defined contribution managed services that will operate and manage the associated people, processes, and systems required to deliver TSP retirement services . . . ."  Statement of Objectives at 3.  Those services include virtually everything necessary to administer and manage the TSP program: "Transition Services," "Participant Correspondence," "Educational Content Delivery and Individualized Education/Advice," "Loan Processing," "Mutual Fund Window," "Plan Accounting Services," "Audit Support Services," "Legal Processing," "Recordkeeping," "Transaction Processing," "Security," "Information Technology," "Program Management," and "Quality Management."  Statement of Objectives at 5; *see* Compl. ¶ 186.  As such, disbursement requests are approved and processed by Accenture or its subcontractors.  *See, e.g.*, 5 C.F.R. §§ 1650.24, 1650.41, 1650.42, 1655.10 (requiring participants to initiate

---

[6] The Statement of Objectives cited in the Complaint, at ¶180, entitled Agency Bid No. Title: TIB-2017-RFP-0001-RKSA, Recordkeeping Services Acquisition Statement of Objectives, is *available at* https://sam.gov/opp/f706db43904cecea0e2107a8b38fc985/view#contact. However, that links to a pre-solicitation version of the document.  The final version of the Statement of Objectives which was actually incorporated into the Board's contract with Accenture is attachment J.1 to the Contract and is attached hereto for the Court's convenience.

requests for post-employment withdrawals, age-based in-service withdrawals, financial hardship withdrawals, and loan requests, respectively, "in the form and manner prescribed by the TSP recordkeeper.").

Nothing in the Contract dictates the means or procedures by which Accenture is to accomplish these objectives. *See generally* Contract. Rather, Accenture is responsible for "[e]stablishing all necessary business policies and procedures to meet the objectives" of the Contract. Statement of Objectives at 10 § 4.4.

### B.    The Board's Monitoring Responsibilities

After a fiduciary has hired a service provider, ERISA (and therefore FERSA) requires the fiduciary periodically to monitor the service provider's performance. *See* 29 C.F.R. § 2509.75-8 at FR-17. The Department of Labor recommends that fiduciaries establish and follow a formal review process to ensure compliance with the terms of the plan and statutory standards. *See id.* Additionally, the Federal Acquisition Regulation requires the Board to hold Accenture accountable for its performance by approving and monitoring a set of measurable performance standards. *See* 48 C.F.R. § 37.603. Consistent with these requirements, the FRTIB "conducts, at least, monthly reviews of the TSP record keeper's performance," and various third parties conduct audits of the recordkeeper's performance. *See* Compl. ¶ 134; 5 U.S.C. §§ 8439(b), 8477(g).

In addition, the Board's contract with Accenture requires Accenture to maintain an FRTIB-approved quality assurance plan and to provide demonstrable proof that it has consistently met performance targets. *See* Contract at E.3 and E.5(d). The contract also gives the Board the right to surveil "all services and requirements called for in [the contract]." *Id.* at F.3. Accenture is required to provide performance reports, as a contract deliverable, on a daily,

weekly, monthly, quarterly, and annual basis, depending on the report. *Id.* at F.3. Moreover, under the contract, an FRTIB-employed Contracting Officer's Representative (COR) is responsible for administering the performance of work under the contract, by specifically monitoring Accenture's progress, assessing performance, and performing inspections and acceptances of required data items. *Id.* at G.1.2.

## 4.    PLAINTIFFS' CLAIMS[7]

The named plaintiffs are seven TSP participants or beneficiaries who allege they have requested Hardship Withdrawals, Post-Employment Withdrawals, Death Benefits, and Loans, and that because of unwarranted delays and mishaps by Accenture and Alight in processing their requests, they have been subjected to unwarranted penalties, deductions, expenses, and losses. The Complaint consists of six counts: five against Accenture and/or Alight and one against the Board.

The sole count asserted against the Board, Count Two, alleges that the Board violated FERSA by failing to fulfill its fiduciary duty in four respects:

- overseeing Accenture's and Alight's transition of the TSP system;

- ensuring that plaintiffs received the rights and benefits to which they are entitled under FERSA in a timely and correct manner;

---

[7] The Complaint, consisting of 94 pages and more than 338 paragraphs, does not meet the Fed. R. Civ. P. 8(a)(2) requirement that a complaint to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (Rule 8(a) requires a "short and plain statement" so as "to give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests"). Nor does it meet the Fed. R. Civ. P. 8(d) requirement that each allegation be "simple, concise, and direct." "When a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative or on a motion by the defendant, to strike any portions that are redundant or immaterial, *see* Fed. R. Civ. P. 12(f), or to dismiss the complaint." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).

- ensuring that the Converge transition and post-transition services offered to plaintiffs were made in accordance with the contract, industry standards, and FERSA; and

- defraying unreasonable costs to Accenture and/or Alight for services provided to TSP participants and beneficiaries.

Complaint ¶ 304. Count Two further alleges that the FRTIB defendants are personally liable to the TSP for any losses to the Fund, *id.* ¶ 305, and that they are jointly and severally liable for the breaches of fiduciary duty committed by Accenture and Alight, *id.* ¶ 306. Plaintiffs seek to recover benefits and to enforce their right to such benefits. *Id.* ¶ 308. In Count Two they also seek an order "enjoining AFS' and Alight's practices in violation of FERSA and granting equitable relief, including in the form of an order compelling the disbursement of qualified TSP loans, Hardship Withdrawals, Non-Hardship Active Withdrawals, Out of Service Withdrawals, and Death Benefits within five business days." *Id.* ¶ 310.

The remaining Counts of the Complaint are directed exclusively at Accenture and Alight for alleged breach of fiduciary duties under FERSA (Count 1, Compl. ¶ 291); negligence (Count 3, Compl. ¶¶ 314, 317); breach of contract (Count 4, Compl. ¶ 323); unjust enrichment (Count 5, Compl. ¶ 329); and common law breach of fiduciary duty (Count 6, Compl. ¶¶ 336-37). With respect to Count One, plaintiffs seek to enjoin the alleged practices by Accenture and Alight, equitable relief, and an order compelling disbursement. *Id.* ¶ 298. As a result of the respective breaches in Counts Three, Four, and Six, plaintiffs contend that they suffered damages in an amount to be proven at trial. *Id.* ¶¶ 320, 325, 338. With respect to Count Five, plaintiffs claim they are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon the unjust gains, *id.* ¶ 334.

In their Prayer for Relief, plaintiffs request, *inter alia*, an order awarding declaratory relief and enjoining defendants from continuing the allegedly negligent, unlawful, and unfair

business practices; appropriate injunctive and/or declaratory relief, disgorgement, and/or restitution; damages; and a declaration that defendants are financially responsible for all class notices and the administration of class relief.  Plaintiffs' Prayer for Relief does not differentiate among the three defendants in identifying the relief they seek.

## ARGUMENT

As set forth below, plaintiffs' sole count against the Board, Count Two, should be dismissed for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1), or in the alternative, for failure to state a claim on which relief can be granted under Fed. R. Civ. P. 12(b)(6).

I.    **PLAINTIFFS' CLAIMS AGAINST THE BOARD SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION UNDER FED. R. CIV. P. 12(b)(1)**

A.    **The Fed. R. Civ. P. 12(b)(1) Legal Standard**

"A federal district court may only hear a claim over which [it] has subject matter jurisdiction; therefore, a Rule 12(b)(1) motion for dismissal is a threshold challenge to a court's jurisdiction." *M.J. v. Dist. of Columbia*, 401 F. Supp. 3d 1, 6-7 (D.D.C. 2019).  To survive a Rule 12(b)(1) motion, plaintiffs bear the burden of establishing the Court's jurisdiction by a preponderance of the evidence.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *ForUsAll, Inc. v. U.S. Dep't of Labor*, No. 22-CV-1551 (CRC), 2023 WL 5559682, at *3 (D.D.C. Aug. 29, 2023).  "[T]he court may consider documents outside the pleadings to assure itself that it has jurisdiction." *ForUsAll,* No. 22-CV-1551 (CRC), 2023 WL 5559682, at *3.  "Faced with motions to dismiss under Rule 12(b)(1) and Rule 12(b)(6), a court should first consider the Rule 12(b)(1) motion because [o]nce a court determines that it lacks subject matter jurisdiction, it can proceed no further." *M.J. v. Dist. of Columbia*, 401 F. Supp. 3d at 7.

13

**B.    Plaintiffs Identify No Waiver of Sovereign Immunity that Would Permit Monetary Relief Against the Board; to the Contrary, FERSA Expressly Precludes Such Relief.**

The United States is subject to suit only to the extent that it has explicitly waived its sovereign immunity. *Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999); *see also Sossamon v. Texas*, 563 U.S. 277, 285 (2011) ("waiver of sovereign immunity must extend unambiguously to . . . monetary claims"). Plaintiffs seek to recover monetary disbursements from the Board ("TSP Loans, Hardship Withdrawals, Non-Hardship Active Withdrawals, Out of Service Withdrawals, and Death Benefits"), Compl. ¶ 308, and request "such other equitable or remedial relief as the court considers appropriate," *id.* ¶ 305. In their Prayer for Relief, plaintiffs seek, *inter alia*, disgorgement and/or restitution, as well as damages, including punitive damages. However, FERSA does not contain the necessary waiver of sovereign immunity for such relief. In FERSA, the United States has not "unambiguously" waived its sovereign immunity for any form of monetary relief; rather, it has done the opposite -- by affirmatively declaring the absence of any such waiver. FERSA provides that "[a]ny relief awarded against a Member of the Board or the Executive Director of the Board in a civil action authorized by [5 U.S.C. § 8477(e)(3)] may not include any monetary damages or any other recovery of money." 5 U.S.C. § 8477(e)(5). Plaintiffs therefore cannot recover damages, punitive damages, disgorgement, restitution, or any other monetary relief against the Board defendants, irrespective of whether such monetary relief is characterized as a legal remedy or an equitable remedy.

Plaintiffs' reliance on 5 U.S.C. § 8477(e)(1)(A) in contending that the Board defendants are personally liable for plaintiffs' recovery is misplaced. *See* Compl. ¶ 305. No person other than the Secretary of Labor is authorized to bring suit to enforce the personal liability described

14

under §8477(e)(1)(A). Congress has provided a comprehensive remedial scheme to govern disputes involving the FRTIB. *See generally* 5 U.S.C. § 8477. As part of that scheme, Congress spelled out in detail: (1) the claims that each type of plaintiff may bring; (2) the forum in which such claims may be brought; (3) the defendants against whom the claims may be brought; and (4) the remedies a plaintiff may seek. *See* 5 U.S.C. §§ 8477(e)(3)-(7). The only enforcement provision in FERSA that cross-references the personal liability created in §8477(e)(1)(A) authorizes suit to be brought exclusively by the Secretary of Labor. *See* 5 U.S.C. 8477(e)(3)(A)(i) ("A civil action may be brought . . . by the Secretary of Labor against any fiduciary other than a Member of the Board or Executive Director of the Board—(i) to determine and enforce a liability under . . . [5 U.S.C. § 8477(e)](1)(A) . . . ."). Notably, even that provision explicitly forbids enforcement against "a Member of the Board or the Executive Director." 5 U.S.C. § 8477(e)(3)(A).

The Court therefore lacks jurisdiction to award any form of monetary relief against the Board defendants, and plaintiffs' claims for monetary relief against the Board should be dismissed under Fed. R. Civ. P. 12(b)(1).

### C.    Plaintiffs Lack Standing to Assert Claims for Declaratory and Injunctive Relief Against the Board

#### 1.    There is no Certainly Impending Injury Which Warrants Injunctive Relief

Plaintiffs also lack standing to pursue their claims for declaratory and injunctive relief against the Board. Article III limits the jurisdiction of federal courts to "Cases" or "Controversies." *See* U.S. Const. art. III, § 2, cl. 1. The party invoking federal jurisdiction bears the burden of establishing the three elements of Article III standing to sue. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). A plaintiff establishes Article III standing

"by showing that he seeks relief from an injury that is concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Kareem v. Haspel*, 986 F.3d 859, 865 (D.C. Cir. 2021); *see also Carney v. Adams*, 592 U.S. __, 141 S. Ct. 493, 498 (2020). "[T]he court may consider documents outside the pleadings to assure itself that it has jurisdiction." *Sandoval v. U.S. Dep't of Justice*, 322 F. Supp. 3d 101, 104 (D.D.C. 2018).

To establish standing to pursue prospective injunctive relief, such as the "permanent injunction" plaintiffs seek, Compl. Prayer for Relief ¶ 8, a plaintiff must demonstrate that "he . . . is immediately in danger of sustaining some direct injury" that is "real and immediate, not conjectural or hypothetical," *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983), and that "there is a substantial risk such injury will occur," *Hemp Indus. Ass'n v. DEA*, 36 F.4th 278, 290 (D.C. Cir. 2022). Past exposure to conduct will not suffice to support standing to pursue future injunctive relief. *Lyons*, 461 U.S. at 96 (citing *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)); *Kareem*, 986 F.3d at 865. And "where standing turns on a claim of future injury, the 'threatened injury must be certainly impending'; '[a]llegations of possible future injury' will not suffice." *Thompson v. Sessions*, No. 16-3 (RDM), No. 21-1893 (TJK), 2018 WL 4680201, at *3 (D.D.C. Sept. 27, 2018) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). "If a court 'can only speculate' about whether and how an injury will occur, that is 'ordinarily fatal to standing.'" *Stirrup v. Biden*, __ F. Supp. 3d __, 2023 WL 2585822, at *6 (D.D.C. 2023) (quoting *Electronic Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 379 (D.C. Cir. 2017)).

Plaintiffs claim generally that the Board's failure to monitor Accenture and Alight deprived them of their right to the timely and correct disbursement of TSP funds. *See* Compl.

¶¶ 304; *see also id.* ¶¶ 221, 226, 237, 245.  However, the Complaint does not allege any "certainly impending" injury, much less present specific facts to show it.  In particular, plaintiffs fail to allege any facts indicating that they plan to seek TSP disbursements in the future, what specific disbursements they will seek, that Accenture and Alight are likely to fail to process their future requests in a timely and correct manner, and that the Board is likely to fail to monitor Accenture and Alight prudently.  *See Carney*, 141 S. Ct. at 501-02 ("[A]n injury in fact requires an intent that is concrete," and plaintiff that "did not show that he was 'able and ready' to apply for a vacancy in the reasonably imminent future" lacked standing); *Thompson*, No. 16-3 (RDM), 2018 WL 4680201, at *5 (Plaintiffs lacked standing where the FOIA requests at issue had been processed, plaintiff did not attest that he intended to file future requests and, if so, what specific requests he would file, and there was no evidence that the agency would likely fail to process FOIA requests in a timely manner.); *see also Bellanger v. Health Plan of Nev.*, 814 F. Supp. 914, 917 (D. Nev. 1992) (Plaintiff failed to meet injunctive relief requirements where he could not show "a likelihood of substantial and immediate injury[,]" that he was "likely to be injured again in the near future, that he would then submit a [health insurance] claim to Defendant, who would then deny this claim in violation of ERISA, and that this denial of medical coverage would result in an injury not subject to a remedy at law.").  Given the absence of any factual allegation that the named plaintiffs will even seek disbursements from the TSP in the future, much less face a "substantial risk" that Accenture and Alight will not process their requests properly and the Board will not monitor prudently, plaintiffs have failed to assert an injury-in-fact sufficient to survive a motion to dismiss.  *See Thompson*, No. 16-3 (RDM), 2018 WL 4680201, at *4.

17

Moreover, even were the Court to conclude that plaintiffs have met their standing burden to pursue injunctive relief against the Board, plaintiffs still could not prevail in their effort to enjoin the Board here. "'The equitable remedy' of an injunction 'is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that [plaintiffs] will be wronged again.'" *Thompson*, No. 16-3 (RDM), 2018 WL 4680201, at *5 (quoting *Lyons*, 461 U.S. at 111). There is no evidence that an injunction directing the Board to monitor the handling of plaintiffs' future disbursement requests "would have any meaning in the absence of concrete evidence" that plaintiffs will likely submit any such requests, that Accenture and Alight will likely mishandle them, and that the Board will likely not fulfill its monitoring obligations. *See id*. Given that plaintiffs have failed to show any "real or immediate" threat of injury, *Lyons*, 461 U.S. at 111, they have not met their burden of demonstrating an entitlement to injunctive relief against the Board.

For standing purposes, plaintiffs also fail to meet their burden of showing any "line of causation" that is more than "attenuated," *Allen v. Wright*, 468 U.S. 737, 757 (1984), between the Board's alleged failure to monitor adequately and the alleged poor management of the TSP system by Accenture and Alight. Nor have plaintiffs shown a "substantial likelihood" that the requested relief against the Board—or any equitable relief within the Court's authority to award—would redress their alleged deprivation of timely and correct benefits disbursements, *ForUsAll*, No. 22-cv-1551(CRC), 2023 WL 5559682, at *5. Plaintiffs implicitly acknowledge the absence of causality and redressability with respect to the Board's monitoring activities when, in the Second Cause of Action—again, the only count directed at the Board—they seek an order "enjoining *AFS' and Alight's* practices in violation of FERSA." Compl. ¶ 298 (emphasis added). By seeking an injunction enjoining Accenture and Alight—and not even

18

mentioning the Board—plaintiffs thereby signal that the only relief that might effectively redress their alleged injuries would have to come from the direct cause of those injuries: actions and omissions of Accenture and/or Alight.

It would be purely speculative to conclude that insufficient monitoring by the Board caused plaintiffs' injuries, or that an injunction requiring different or additional monitoring measures by the Board would cure any ongoing or imminent failure by Accenture and Alight to make correct and timely TSP disbursements in their day-to-day operations. *Cf. Nat'l Wrestling Coaches Ass'n*, 366 F.3d 930, 938 (D.C. Cir. 2004). "[A] plaintiff's standing fails where it is purely speculative that a requested change in government policy will alter the behavior of regulated third parties that are the direct cause of the plaintiff's injuries."); *see also Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 42-43 (1976). The notion that an injunction against the Board would remedy plaintiffs' injuries is particularly conjectural given that Accenture and Alight established, own, operate, and manage all relevant recordkeeping, financial, and IT systems. *See* Compl. ¶¶ 10-11, 180, 181, 186, 188-94, 200; Statement of Objectives at 3, 5, 10; Contract at C.1.

## 2.    There is No Immediate Controversy Which Warrants Declaratory Relief

Plaintiffs seek declaratory relief in tandem with injunctive relief, but it is unclear from the Complaint what sort of declaration plaintiffs are seeking against the Board. Nevertheless, plaintiffs fail to establish that they are entitled to any declaratory relief against the Board. The Article III case-or-controversy requirement "is no less strict when a party is seeking a declaratory judgment than for any other relief." *Fed. Express Corp. v. Air Line Pilots Ass'n*, 67 F.3d 961, 963 (D.C. Cir. 1995) (citing *Altvater v. Freeman*, 319 U.S. 359, 363 (1943)). "To establish that a matter is a 'controversy' within the meaning of the Declaratory Judgment Act

19

[28 U.S.C. § 2201(a)] and Article III of the Constitution, a party must show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *C.F. Folks, Ltd. v. DC Jefferson Bldg., LLC*, 308 F. Supp. 3d 145, 150 (D.D.C. 2018).  Typically, a declaratory judgment claim based on the occurrence of a future or contingent event is not sufficiently immediate or real to be justiciable.  *Id*.

Here, plaintiffs fail to show a "substantial controversy . . . of sufficient immediacy and reality" to warrant declaratory relief against the Board.  As with their claim for injunctive relief, plaintiffs allege no facts indicating that they are likely to seek further TSP disbursements, that Accenture and Alight are likely to mismanage their disbursements, and that the Board is likely to monitor Accenture and Alight inadequately.  Indeed, it is unclear what purpose would be served by a declaratory judgment against the Board, or what "controversy" such a declaratory judgment would address, when the facts alleged in the Complaint indicate that the Board's monitoring measures were sufficient to fulfill its fiduciary obligations, and that actions by Accenture and Alight were the direct cause of plaintiffs' alleged harm.  Hence, plaintiffs' request for a declaratory judgment against the Board should be denied.

## II.    PLAINTIFFS FAIL TO STATE A PLAUSIBLE CLAIM THAT THE BOARD BREACHED A FIDUCIARY DUTY TO MONITOR

### A.  The Fed. R. Civ. P. 12(b)(6) Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *ForUsAll,* No. 22-CV-1551 (CRC), 2023 WL 5559682, at *3; *cf. Kareem v. Haspel*, 986 F.3d at 866.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

20

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."
*Iqbal*, 556 U.S. at 678.  That is, the complaint must include factual allegations that, when taken
as true, "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555; *Coburn
v. Evercore Trust Co., N.A.*, 844 F.3d 965, 968 (D.C. Cir. 2016); *Afanasieva v. Wash. Metro.
Area Transit Auth.*, 588 F. Supp. 3d 99, 105 (D.D.C. 2022).  "[F]acts that are 'merely
consistent with' a defendant's liability" do not satisfy this standard.  *Iqbal*, 556 U.S. at 678; *see
also RSM Production v. Freshfields Bruckhaus Deringer*, 682 F.3d 1043, 1048 (D.C. Cir.
2012).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for
more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678
(citing *Twombly,* 550 U.S. at 556); *Busby v. Capital One, NA*, 772 F. Supp. 2d 268, 274
(D.D.C. 2011).

It is "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief [with]
more than labels and conclusions, and a formulaic recitation of the elements of a cause of
action will not do."  *Twombly*, 550 U.S. at 555 (first alteration in original) (internal quotation
marks omitted); *Coburn*, 844 F.3d at 968; *see Iqbal*, 556 U.S. at 678.  The court "accept[s]
neither inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in
the complaint, nor legal conclusions cast in the form of factual allegations."  *Browning v.
Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002); *see Iqbal*, 556 U.S. at 687.  "In determining
whether a complaint fails to state a claim, [a court] may consider only the facts alleged in the
complaint, any documents either attached to or incorporated in the complaint and matters of
which [the court] may take judicial notice."  *EEOC v. St. Francis Xavier Parochial Sch.*, 117
F.3d 621, 624 (D.C. Cir. 1997); *Afanasieva*, 588 F. Supp. 3d at 105-06.

**B.    Plaintiffs Fail to Meet Their Threshold Burden to State a Plausible Claim**

Plaintiffs have not met their threshold burden of stating a facially plausible claim that the Board failed to discharge its fiduciary responsibilities "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent individual . . . would use . . . ." 5 U.S.C. § 8477(b)(1)(B).  Plaintiffs claim that the Board breached its fiduciary duty to monitor Accenture and Alight, but allege no facts to support their "naked assertion[s]."  *See Iqbal*, 556 U.S. at 678.  Rather, plaintiffs make conclusory allegations that the Board "failed to oversee AFS and Alight's work in order to ensure that they fulfilled their legal obligations," Compl. ¶ 12; that "under the FRTIB and Executive Director's oversight," AFS and Alight failed to carry out their responsibilities, Compl. ¶ 221; and that plaintiffs suffered hardship as a result of "AFS' seriously deficient and inoperable system" and "the FRTIB and Executive Director's failure to oversee" Accenture and Alight, Compl. ¶¶ 226, 237, 245.

The Complaint does not contain a single specific allegation identifying deficiencies in the Board's procedures for overseeing Accenture and Alight or describing *how* the Board breached its fiduciary duty to monitor.  *See Santiago v. Univ. of Miami*, No. 1:20-cv-21784-GAYLES/LOUIS, 2021 WL 1173164, at *9 (S.D. Fla. March 1, 2021) (Claim that defendant breached fiduciary duty to monitor recordkeeper was dismissed where plaintiffs alleged "no facts showing what process of monitoring . . . existed or how it was deficient."); *Cassell v. Vanderbilt Univ.*, 285 F. Supp. 3d 1056, 1067 (M.D. Tenn. 2018) (same); *Neil v. Zell*, 677 F. Supp. 2d 1010, 1023-24 (N.D. Ill. 2010) (Where plaintiffs alleged "only in the most general terms" that board of directors breached its fiduciary duty to monitor, without factual allegations "about *how*" the defendants breached that duty, allegations were "nothing more than speculation" that "fail[ed] *Twombly*'s plausibility requirement.").  Plaintiffs' allegations

22

are devoid of factual content and cannot lead to a reasonable inference that the Board is liable

for failing to monitor Accenture and Alight with proper "care, skill, prudence, and diligence,"

5 U.S.C. § 8477(b)(1)(B).  *See Iqbal*, 556 U.S. at 678-79.

In an apparent attempt to explain how the Board breached its fiduciary duty, plaintiffs

allege that the Board failed to act prudently in "(i) overseeing the TSP record keepers' (AFS

and Alight) transition of the TSP system; (ii) ensuring that Plaintiffs . . . received the rights and

benefits they are entitled to under FERSA . . . in a timely and correct manner; (iii) ensuring that

the Converge transition and post-transition services offered to Plaintiffs . . . were made in

accordance with the Contract, industry standards, and FERSA; and (iv) defraying unreasonable

costs to AFS and/or Alight for the services provided to TSP participants and beneficiaries."

Compl. ¶ 304.  These tautological assertions merely echo the requirements of 5 U.S.C.

§8477(b)(1) and state legal conclusions that the Board failed to comply with those

requirements.  *See Iqbal*, 556 U.S. at 687; *Browning*, 292 F.3d at 242.  However, plaintiffs

omit any supporting facts identifying specific shortcomings in the Board's actual monitoring

activities or describing what the Board could and should have done to improve or enhance

those activities.

### C.    Deficient Oversight Cannot Be Inferred from Accenture's and Alight's Alleged Poor Customer Service

In effect, plaintiffs ask the Court to infer deficient oversight from instances of alleged

delayed payments and poor customer service affecting seven named plaintiffs (and a handful of

anonymous or pseudonymous commentors on Reddit or Twitter, Compl. ¶¶ 220, 225, 244)

following a massive overhaul of the people, processes, and technologies needed to run the TSP.

But the Court cannot accept inferences that are unsupported by factual Complaint allegations

23

that would identify the specific alleged deficiencies in the Board's oversight.  *See Browning*, 292 F.3d at 242.

And such an inference would in any event be improper because the test for whether one satisfies FERSA's fiduciary duties focuses on a fiduciary's conduct—not on its results.  *See Barchock v. CVS Health Corp.*, 886 F.3d 43, 44-45 (1st Cir. 2018) ("[T]he test of prudence . . . is one of *conduct*, and not a test of the result of performance . . . ."); *see also DiFelice v. U.S. Airways*, 497 F.3d 410, 424 (4th Cir. 2007) ("[W]hether a fiduciary's actions are prudent cannot be measured in hindsight . . . ."); *cf. Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014) ("[T]he duty of prudence turns on the circumstances . . . prevailing at the time of the fiduciary acts . . . .").  Hence, failure by the Board to meet its fiduciary duty to monitor Accenture and Alight cannot be inferred from the outcome of individual TSP disbursement requests, particularly given that third parties, Accenture and Alight, were responsible for establishing and operating the TSP system, along with all associated policies and services.  *See* Compl. ¶ 175 ("[T]he Board sought to remove itself from the management of the TSP platform and to have 'the vendor . . . own and operate all IT infrastructure . . . .'"); *id.* ¶ 200 ("Accenture, '[i]ndependently and not as an agent of the Government,' is responsible for 'furnish[ing] all the necessary services, qualified personnel, material, equipment, and facilities, not otherwise provided by the Government as needed to perform the Recordkeeping Services.'"); *see also id.* ¶¶ 10-11, 133, 146, 180, 189.

If anything, the Complaint's factual allegations, while by no means a complete account of the Board's monitoring actions,[8] indicate that the Board prudently oversaw the operations of

---

[8] *See* Compl. ¶ 182 ("'[t]he . . . TSP is subject to substantial, ongoing audits and regulatory oversight and involvement . . . .'").

the TSP program in fulfillment of its fiduciary obligations.  The Complaint acknowledges that the Board held public "meetings to discuss the Program's issues, including, *inter alia*, failure to process TSP Loans, Hardship Withdrawals, Non-Hardship Action Withdrawals, Out of Service Withdrawals, and Death Benefits . . . ."  Compl. ¶ 25.  The Complaint further acknowledges that, in accordance with the requirement that a fiduciary review the performance of its service providers "at reasonable intervals," 29 C.F.R. § 2509.75-8 at FR-17, the Board "conducts, at least, monthly reviews of the TSP record keeper's performance" and various third parties conduct audits of the recordkeeper's performance.  Compl. ¶ 134; *see* 5 U.S.C. §§ 8439(b), 8477(g).  And finally, the Board's contract includes rigorous monitoring and surveillance measures that enable the Board to acquire information and assess Accenture's work performance.  *See* Contract E.3, E.5(d), F.3, G.1.2.  None of the allegations in the Complaint indicates that the Board failed to fulfill its regulatory and contractual obligations to track Accenture's compliance with performance standards and to take appropriate action, in accordance with the Board's fiduciary duty.

### D.    There Is No Plausible Claim That the Board Should Be Held Jointly and Severally Liable

Plaintiffs' allegation that the Board defendants can be held jointly and severally liable for Accenture's and Alight's breaches of fiduciary duty, Compl. ¶ 306, also falls short of stating a plausible claim.  *See Iqbal*, 556 U.S. at 678.  In support of this contention, plaintiffs allege that the Board defendants "(i) participated knowingly in, or knowingly sought to conceal, an act or omission of such other fiduciaries, knowing such act or omission is such a breach; (ii) failed to comply with 5 U.S.C. § 8477(b) in the administration of their specific responsibilities which give rise to the fiduciary status; (iii) have enabled such other fiduciaries to breach their fiduciary duties; and (iv) have knowledge of the fiduciary duty breaches of

25

others and did not make reasonable efforts under the circumstances to remedy the breaches." Compl. ¶ 306. These allegations parrot the legal standard in 5 U.S.C. § 8477(e)(1)(D), but plaintiffs' mere recital of the elements of the cause of action, without substantiating factual allegations, is insufficient to show that the Board is jointly and severally liable. *See Twombly*, 550 U.S. at 555 (A "formulaic recitation of the elements of a cause of action will not do.").

Furthermore, once again, the alleged facts do not support joint and several liability. Far from attempting to conceal the conduct of the recordkeeper, the Board discussed Accenture's recordkeeping and service issues in public Board meetings. Compl. ¶ 25. Similarly, nothing alleged in the Complaint indicates that the Board has, by any alleged failure to discharge its responsibilities, "enabled" Accenture and Alight to breach their fiduciary duties. *See* 5 U.S.C. § 8477(e)(1)(D)(ii). On the contrary, the alleged facts show the Board's commitment to holding Accenture accountable. *See, e.g.*, Compl. ¶ 260 ("FRTIB member Dana Bilyeu stated in FRTIB's June 2022 meeting that AFS's projections of the need for ThriftLine call center representatives were 'very far off.' Bilyeu further stated that there needs to be accountability with AFS, which runs the call center."). Publicly available minutes of Board meetings show that the Board promptly "arrange[d] for . . . Accenture . . . to make a presentation to the Board regarding lessons learned and improvements going forward," and that the Executive Director "had multiple conversations with the head of AFS to ensure [AFS] understands the critical nature of the issues." *See* FRTIB June 2022 Board Meeting Minutes at 3, *available at* https://www.frtib.gov/meeting_minutes/2022/2022June.pdf.[9] Finally, to the extent the Board

---

[9] *See also* FRTIB August 2022 Board Meeting Minutes at 3, *available at* https://www.frtib.gov/meeting_minutes/2022/2022Aug.pdf ("Chair Gerber stated the entire Board was very disappointed in the AFS performance and how the transition started but appreciates the improvement they have made since then. AFS should be in frequent

might have had knowledge of alleged breaches by Accenture or Alight, plaintiffs allege no facts establishing that the Board failed to make "reasonable efforts under the circumstances to remedy the breach." *See id.* § 8477(e)(1)(D)(iii).

Plaintiffs need more than an unfavorable outcome or the conclusory recital of the elements of a cause of action to state a claim that the Board failed to discharge its obligation to monitor "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent individual" would use. 5 U.S.C. § 8477(b)(1)(B). Instead, plaintiffs must plead specific facts to support their threadbare allegations. Having failed to meet their obligation to plead such facts, plaintiffs have failed to state a claim upon which relief can be granted, and their claims against the Board should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## <u>CONCLUSION</u>

For the foregoing reasons, Count Two of the Complaint against the Board should be dismissed.

DATED: November 6, 2023                     Respectfully submitted,

                                            BRIAN M. BOYNTON
                                            Principal Deputy Assistant Attorney General

                                            CHRISTOPHER HALL
                                            Assistant Director

                                            /s/ *Lisa A. Olson*
                                            LISA A. OLSON
                                            Senior Trial Counsel
                                            U.S. Department of Justice
                                            Civil Division, Federal Programs Branch
                                            1100 L Street, N.W., Room 12200
                                            Washington, D.C. 20005

---

communication with Mr. Deo and the FRTIB leadership team, as the Board will be confirming that staff is receiving adequate information from AFS.").

Telephone: (202) 514-5633
E-mail: lisa.olson@usdoj.gov
*Counsel for FRTIB Defendants*

28