UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRIDGES, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 1:23-cv-01568-RDM |
| ) | |
| ACCENTURE FEDERAL SERVICES, ) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**FEDERAL DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS COUNT TWO OF THE COMPLAINT**

**INTRODUCTION**

It is undisputed that the named plaintiffs in this action have now all received the Thrift Savings Plan ("TSP") benefits they sought, whose acquisition was the primary objective of this lawsuit. And because plaintiffs' other claims for retrospective relief against the Federal Retirement Thrift Investment Board ("FRTIB" or "Board")[1] would constitute monetary damages, those claims are barred by sovereign immunity. As a result, plaintiffs' standing to sue the Board now rests solely upon anecdotal allegations that unidentified, non-party, putative class members are experiencing or may in the future experience service issues with the TSP system – described by plaintiffs as "bugs." The law is clear that plaintiffs cannot rely on alleged harm to non-parties, irrespective of whether they are purported members of a putative class, in order to establish standing to sue in the first place. And, in any event, mere conjecture about the hypothetical possibility of future harm is insufficient to establish Article III standing

---

[1] "Board" and "FRTIB" as used herein refer to all the federal defendants in this lawsuit.

in the absence of concrete plans *by the plaintiffs* to seek future TSP benefits, and some demonstrated likelihood of recurrence.

Moreover, even if plaintiffs could establish ongoing harm as a result of the TSP system, that harm would not be traceable to the Board, but rather, is the result of independent actions by Accenture and Alight, which are the organizations that actually established and manage the TSP system at issue. For similar reasons, plaintiffs' alleged harm cannot be redressed by relief against the Board, and indeed plaintiffs have failed to identify any demand for equitable relief directed at the Board that could change the outcome here. Accordingly, plaintiffs' claims against the Board should be dismissed for lack of subject matter jurisdiction.

Even if plaintiffs could establish standing, their claim against the Board should be dismissed for failure to state a claim upon which relief can be granted. While the Complaint is replete with factual allegations of mismanagement by Accenture and Alight, it fails to allege a single fact connecting that alleged misconduct to inadequate monitoring by the Board. And there is no excuse for plaintiffs' failure to articulate a single specific deficiency in the Board's monitoring activities, when those activities are transparent and are dictated by the law and the Converge contract. Nevertheless, plaintiffs ask the Court to leap to the implausible conclusion that their allegations show that the *Board's* conduct somehow resulted in Accenture's and Alight's alleged poor performance. The Court must apply careful scrutiny to the fiduciary-breach claims against the Board to "divide the plausible sheep from the meritless goats." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). Plaintiffs' claims cannot withstand such scrutiny, and their claims against the Board should therefore be dismissed.

## **ARGUMENT**

As detailed in the Board's opening brief and further set forth below, plaintiffs' claims against the Board should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject

matter jurisdiction or, alternatively, pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

I.     **Plaintiffs' Claims Fall Outside the Court's Subject Matter Jurisdiction**

The law is clear that "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 436 (2021) (same). Thus, separate and apart from plaintiffs' claims against Accenture or Alight, plaintiffs are required to establish subject-matter jurisdiction to pursue any retrospective or prospective relief against the Board. Plaintiffs have not met that burden.

This Court lacks subject matter jurisdiction because plaintiffs have failed to establish any ongoing harm that is legally cognizable. As set forth in the Board's opening brief and further detailed below: (1) each of the plaintiffs has already received the TSP benefits at issue; (2) plaintiffs' only other claims for retrospective relief against the Board seek monetary damages, which are barred by sovereign immunity; and (3) plaintiffs lack standing to seek prospective relief against the Board—including the intrusive monitoring injunction they seek—since they have neither alleged nor shown that they will seek TSP benefits in the future, much less demonstrated the attenuated possibility that future requests will be mismanaged by Accenture and Alight due to the Board's alleged failure to monitor. All of this the Board explained in its opening brief, and nothing plaintiffs said in opposition suggests otherwise.

A.     **Plaintiffs' Claims for Benefits Have Been Resolved**

Plaintiffs claim that they seek "to recover their own benefits." Plaintiffs' Omnibus Opposition to the Motions to Dismiss Filed by the FRTIB Defendants, Accenture Federal Services, LLC, and Alight Solutions ("Pl. Opp") (ECF No. 39) at 34. However, plaintiffs have

now received all the benefits that they requested to be paid from their TSP accounts. Specifically, plaintiff Bridges received her Hardship Withdrawal proceeds on about October 21, 2022. Class Action Complaint ("Complaint") (ECF No. 1) ¶ 35. Plaintiff Gregorian received his Post-Employment Withdrawal proceeds on about March 7, 2023. *Id.* ¶ 50. Plaintiff Jesse received her Death Benefits on about November 1, 2022. *Id.* ¶ 64. Plaintiff Rodriguez received his Loan proceeds on about December 29, 2022. *Id.* ¶ 74. Plaintiff Taylor received his Hardship Withdrawal proceeds on about October 4, 2022. *Id.* ¶ 83. Plaintiff Watson received her Loan proceeds on about November 10, 2022. *Id.* ¶ 92. Finally, although at the time of the Complaint plaintiff White had allegedly not yet received his TSP Hardship Withdrawal proceeds, he has now received them as of about October 13, 2023. Declaration of Tanner Nohe ¶ 4 (attached)[2]. There are no TSP proceeds outstanding as to any named plaintiffs, and hence their claims for benefits have been resolved.

### B. Plaintiffs' Claims for Retrospective Relief Are Barred by Sovereign Immunity and Lack of Standing

As the Board showed in its opening brief, any claims for monetary relief against the Board are barred by sovereign immunity. Federal Defendants' Memorandum in Support of Motion to Dismiss Count Two of the Complaint ("Fed. Def. Memo.") (ECF No. 29-1) at 22-23. And plaintiffs now concede that they cannot obtain monetary relief against the Board, 5 U.S.C. § 8477(e)(3)(A). Pl. Opp. at 43-45. Having conceded that monetary damages are unavailable, plaintiffs' only rejoinder is to say that they seek no damages against the Board, but only seek "to recover benefits," which they define as TSP loans, hardship withdrawals, non-hardship active withdrawals, out of service withdrawals, and death benefits. *See* Pl. Opp. at

---

[2] The suggestion in plaintiffs' brief that plaintiff White "never received the proceeds" of the Hardship Withdrawal he applied for, Pl. Opp. at 53, is therefore inaccurate.

44-45. As discussed above, all of the named plaintiffs have received the benefits they sought. *See supra* Part I.A. Thus, it is clear from the factual record that plaintiffs cannot show standing to seek the recovery of benefits from the Board.

To the extent plaintiffs contend that they "are still being injured by the TSP's failure," Pl. Opp. at 53, all of those other alleged injuries are clearly monetary. Plaintiffs claim the Board is responsible for "principal and interest payments," "negative credit implications," "withdrawal penalt[ies]," tax consequences, lost "insurance, vehicles, homes, and more," and "the long-term effects of reduced account balances and the loss of compounding benefits." Pl. Opp. at 53-54. Because any relief directed toward those alleged injuries would constitute monetary damages, it is plainly not available here. *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993) (noting that petitioners who sought "monetary relief for all losses their plan sustained as a result of the alleged breach of fiduciary duties" were seeking "nothing other than compensatory *damages,*" not equitable relief); *see also* Pl. Opp. at 43-45 (conceding that plaintiffs cannot obtain monetary relief against the Board).

The cases plaintiffs cite for the proposition that they have standing against the Board based on "ongoing injury" are readily distinguishable. Pl. Opp. at 52-53. Unlike the plaintiffs in *Dearth v. Holder*, 641 F.3d 499 (D.C. Cir. 2011), the government here does not "continue[] to deny" the benefit sought. Rather, it is Accenture and Alight who were in a position to release plaintiffs' benefits and, indeed, they have now done so with respect to every one of them. *See supra* Part I.A. Plaintiffs' reliance on *Anatol Zukerman & Charles Krause Reporting, LLC v. U.S. Postal Serv.*, 64 F.4th 1354 (D.C. Cir. 2023), also is misplaced. Pl. Opp. at 52-53. In *Zukerman*, the Court held that the plaintiff maintained standing even after the custom stamp program at issue was discontinued, because the harm alleged was

discriminatory treatment (*i.e.*, that USPS rejected Zukerman's partisan stamp design while allowing other customers' political stamps). *Zukerman*, 64 F.4th at 1362. In holding that *Zukerman* had standing (based on discriminatory treatment) even though there was no possibility of his experiencing future denials from the now-defunct program, the Court expressly recognized the distinction between standing that "depend[s] on [a] substantive right to any particular benefit" as opposed to "discriminatory treatment in [the] right to receive benefits writ large." *Id.* at 1363 (citing *Heckler v. Mathews*, 465 U.S. 728, 737-38 (1984)). Here, plaintiffs do not allege discriminatory treatment; rather, they allege only that they were denied access to certain benefits and then suffered purely monetary harm after their benefits were paid (which is not a legally cognizable harm against the Board, for the reasons discussed above).

Finally, aside from claims that they have been deprived of "their own benefits," Pl. Opp. at 45, plaintiffs assert that unidentified "TSP participants," "other members of the putative Class," or unnamed "beneficiaries" may be reporting or experiencing "bugs, errors and difficulties" with the TSP system. *Id.* at 53. But the fact that non-party, putative class members may be encountering problems with the TSP system is insufficient to establish Article III standing for the named plaintiffs. As the Supreme Court has emphasized, "[t]hat a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

**C.    Plaintiffs Cannot Show Standing to Seek Prospective Relief Against the Board**

A plaintiff establishes Article III standing "by showing that he seeks relief from an injury that is concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Kareem v. Haspel*, 986 F.3d 859, 865 (D.C. Cir. 2021); *see also Carney v. Adams*, 592 U.S. 53, 58 (2020). But plaintiffs have neither alleged nor shown that they are "immediately in danger of sustaining some direct injury" that is "real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Plaintiffs argue that "[t]here is certainly a practical likelihood that plan participants and beneficiaries will continue to submit requests for benefits in the future," Pl. Opp. at 57, but the Complaint fails to allege any specific facts describing *plaintiffs'* plans for submitting such requests, along with the specific disbursements plaintiffs will seek. The speculation that putative class members might at some future date apply for benefits and not properly receive them – as a result of inadequate monitoring -- does not support standing to sue the Board. *Jefferson v. D.C.*, No. CV 22-1436 (RC), 2023 WL 4250118, at *3 (D.D.C. June 29, 2023) (Plaintiff lacked standing for declaratory and injunctive relief, because "[a]lthough Mr. Jefferson's complaint has allegations suggesting that future overdetentions will happen for other people, there is nothing to indicate '[he] himself will again be involved in one of those unfortunate instances.'") (quoting *Lyons*, 461 U.S. 108).

Moreover, the "equitable remedy of an injunction is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again." *Thompson v. Sessions*, No. 16-3 (RDM), 2018 WL 4680201, at *5 (Sept. 27, 2018) (quoting *Lyons*, 461 U.S. at 111). Here, there is no factual allegation, much less evidence, that enjoining the Board to alter its approach to monitoring Accenture and Alight in order to ensure that they properly process future

7

requests for benefits "would have any meaning in the absence of concrete evidence that [plaintiffs] will file any such requests." *Thompson*, No. 16-3 (RDM), 2018 WL 4680201, at *5. And of course "there is no basis . . . for the Court to enjoin" the Board "from violating the rights of non-parties" to have their benefits claims processed in a timely and correct manner. *Id.*

Even assuming *arguendo* that plaintiffs could show concrete harm, it would not be fairly traceable to the Board's monitoring activities, nor would equitable relief against the Board redress it. *See Dep't of Educ. v. Brown*, 600 U.S. 551, 561 (2023) (plaintiff must show injury is "'fairly traceable to the challenged action *of the defendant*,' meaning that 'there must be a causal connection between the injury and the conduct complained of'") (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)) (emphasis added). Indeed, plaintiffs have failed to specify what monitoring measures the Court should impose -- and the Board could take, within the constraints of its Converge contract and the law -- that would ensure the correct and timely distribution of benefits by Accenture and Alight in the future. *See Thompson*, No. 16-3 (RDM), 2018 WL 4680201, at *5 ("The Court must ask itself what, if anything, there is for it to enjoin.").

The Converge contract, which was intended to modernize the TSP system, obligated Accenture to establish a new TSP system and manage its day-to-day operations. *See* Fed. Def. Memo. at 15-18. The contract is performance-based, which means that it is "structured around the results to be achieved as opposed to the manner by which the work is to be performed." *Id.* at 16-17; *see* 48 C.F.R. § 2.101. Hence, the Board has no direct control over the timeliness of benefit distributions or the "people, processes, and systems required to deliver TSP services . . .

8

."[3]  Fed. Def. Memo. at 17; Recordkeeping Services Acquisition Statement of Objectives at 4 (ECF No. 31-3).  It is therefore unclear what purpose would be served by granting declaratory or injunctive relief against the Board concerning its monitoring activities, and what form such relief would take.  "Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement."  *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 107 (1998).  Given the absence of concrete injury, traceability, and redressability, the Court lacks subject matter jurisdiction over plaintiffs' claims against the Board.

## II.     Plaintiffs' Claims Against the Board Should Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6) for Failure to State a Claim

Despite the transparency in the Board's monitoring processes, plaintiffs' 338-paragraph Complaint fails to pinpoint a single shortcoming in the Board's monitoring activities or a single action the Board should take to improve them.  Instead, plaintiffs ask the Court to infer deficient oversight from Accenture's and Alight's alleged poor performance, a leap which cannot properly be made.  Moreover, the Complaint fails to state a claim of joint and several liability for the Board, because such liability is statutorily impermissible.  Plaintiffs have thereby failed to state a plausible claim against the Board.

### A.     Plaintiffs Fail to Meet Their Threshold Burden to State a Plausible Claim Against the Board for Breaching Its Fiduciary Duty to Monitor

Plaintiffs contend that they are not required to plead specific facts about the Board's "internal processes" for monitoring Accenture and Alight because such information is typically

---

[3] Contrary to what plaintiffs suggest, the Contract between the Board and Accenture was not an attempt to "pass[] the buck."  Pl. Opp. at 47.  Instead, it was an effort to modernize the TSP system by contracting with an entity better equipped to update the technology necessary to provide improved services to participants and beneficiaries.  *See* Fed. Def. Memo. at 15-16.

in the exclusive possession of a defendant such as the Board. Pl. Opp. at 47. Instead, plaintiffs argue that they need only allege facts to show that the Board knew or should have known about the misconduct of Accenture and Alight, and from this alleged misconduct, plaintiffs then ask the Court to infer that the Board's alleged failure to fulfill its monitoring responsibilities somehow accounts for Accenture's and Alight's alleged misconduct. *See id.* at 47-49.

Plaintiffs cannot seriously allege that their failure to identify any deficiency in the Board's monitoring is due to a lack of available information because such information allegedly "is typically in the exclusive possession of a defendant." *Id.* Opp. at 47. Contrary to plaintiffs' assertion, the Board's monitoring "processes" are not "internal." *Id.* Rather, those processes are expressly dictated by the Converge Contract and the law. *See* Fed. Def. Memo. at 18-19. They consist of specific requirements for periodic monitoring, 25 C.F.R. § 2509.75-8 at FR-17; a formal review process, *see id.*; the monitoring of a measurable set of performance standards, *see* 48 C.F.R. § 37.603; and third-party auditing, *see* 5 U.S.C. §§ 8439(b), 8477(g). In addition, the Converge contract requires the Board to approve a quality assurance plan, *see* Contract at E.3 and E.5(d) (ECF No. 31 at Exhibit A.2); gives the Board the right to surveil Accenture's performance, *id.* at F.3; provides for the Board's receipt of regular performance reports from Accenture, *id.*; and confers responsibilities on the Board's Contracting Officer's Representative to monitor Accenture's progress, assess its performance, and perform inspections and acceptances of required data items, *id.* at G.1.2. These requirements indicate that the Board's monitoring activities are transparent, and plaintiffs had before them the information necessary to identify shortcomings in the measures the Board takes to monitor Accenture and Alight. Hence, there is no excuse for plaintiffs' failure to plead specific facts

10

regarding the particular areas in which the Board's monitoring was allegedly inadequate or how it should be supplemented or improved.

Despite the transparency of the Board's monitoring processes, and even assuming *arguendo* that the facts alleged could lead to the "reasonable inference" that Accenture and Alight mismanaged the TSP,[4] *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the Complaint fails to allege a single fact from which it can be inferred that Accenture's and Alight's actions resulted from inadequacies in the Board's monitoring activities. Plaintiffs are essentially arguing that poor management by Accenture and Alight must necessarily be attributable to poor monitoring by the Board. However, the Board is not required to, nor can it, guarantee that Accenture and Alight will manage the TSP with perfection. Rather, the Board must "discharge [its] responsibilities with respect to the Thrift Savings Fund . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent individual acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like objectives . . . ." 5 U.S.C. § 8477(b)(1)(B). No facts alleged in the Complaint indicate that the Board failed to act prudently, and "the test of prudence . . . is one of *conduct*, and not a test of the result of performance . . . ." *Barchock v. CVS Health Corp.*, 886 F.3d 43, 44-45 (1st Cir. 2018); *see also DiFelice v. U.S. Airways*, 497 F.3d 410, 424 (4th

---

[4] Of course, the Board cannot be held liable for breaching its duty to monitor unless the Court finds an underlying breach. *In re Bausch & Lomb Inc. ERISA Litig.*, No. 06-CV-6297, 2008 WL 5234281, at *10 (W.D.N.Y. Dec. 12, 2008) ("Because the plaintiffs' Complaint fails to state a claim for breach of fiduciary duty by any of the Plan's fiduciaries, the plaintiffs' claims for failing to adequately monitor these fiduciaries must also be dismissed."); *see also Rinehart v. Lehman Bros. Holdings, Inc.*, 817 F.3d 56, 68 (2d Cir. 2016) (same); *Brown v. Medtronic*, 628 F.3d 451, 461 (8th Cir. 2010) (same).

Cir. 2007) ("[W]hether a fiduciary's actions are prudent cannot be measured in hindsight . . . ."); *cf. Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014) ("[T[he duty of prudence turns on the circumstances . . . prevailing at the time of the fiduciary acts . . . .").

Indeed, it is telling that all of the cases plaintiffs cite in support of their position, *see* Pl. Opp. at 48-49, involved allegations pertaining to specific aspects of the allegedly deficient monitoring at issue, or allegations that there was no monitoring system in place at all.  *See, e.g.*, *In re Sutter Health ERISA Litig.*, No. 1L20-cv-01007-JLT, 2023 WL 1868865, at *12 (E.D. Cal. Feb. 9, 2023) (alleging failure "to monitor and evaluate the performance of the [fiduciary's] appointees or have a system in place for doing so, standing idly by as the [investment] Plan suffered enormous losses," and failure "to remove appointees 'whose performances were inadequate in that they continued to maintain imprudent, excessively costly, and poorly performing investments'"); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, No. SACV 15-1614-JLS (JCGx), 2016 WL 4507117, at *7 (C.D. Cal. Aug. 5, 2016) (alleging failure to "monitor and evaluate the performance of the [fiduciary's] appointees, or *fail[ing] to have a system in place for doing so*" and "failing to remove appointees who maintained imprudent, excessively costly, and poorly performing investments"); *Krueger v. Ameriprise Fin., Inc.*, No. 11-cv-02781 (SRN/JSM), 2012 WL 5873825, at *18 (D. Minn. Nov. 20, 2012) (alleging failure "to replace the trustees and members of these committees" whose appointments the monitoring defendants controlled); *Harris v. Koenig*, 602 F. Supp. 2d 39, 59-60 (D.D.C. 2009) (alleging failure "to undertake *any* review or oversight" of stock plan trustee despite obligation to "periodically review [its] performance").

These cases contrast with the present case, where plaintiffs have failed to allege a single specific deficiency in the Board's monitoring processes and where there is a monitoring system

demonstrably in place. In other words, not only do the cases cited offer no support for the position that plaintiffs have plausibly alleged that the Board breached its fiduciary duty to monitor, but they demonstrate the standard plaintiffs must meet in order to make out such a claim—a standard that is plainly not satisfied here.[5]

### B. There Is No Plausible Claim That the Board Should Be Held Jointly and Severally Liable

Plaintiffs argue that, pursuant to 5 U.S.C. § 8477(e)(1)(D), the Board can be held jointly and severally liable for Accenture's and Alight's alleged breaches of fiduciary duties under 5 U.S.C. § 8477(b). However, the Federal Employees' Retirement System Act of 1986 ("FERSA"), Pub. L. No. 99-335, 100 Stat. 514 (codified at 5 U.S.C. §§ 8351 and 8401 *et seq.*), does not allow for the Board to be held jointly and severally liable for another fiduciary's breach. The reasons for this conclusion are apparent from the statutory scheme.

Subsection (b) sets forth certain standards governing fiduciary conduct, for example, requiring that a fiduciary discharge its responsibilities with respect to the TSP "with the care, skill, prudence, and diligence under the circumstances that a prudent individual . . . would use . . . ." 5 U.S.C. § 8477(b)(1)(B). Subsection (e) states that "[a] fiduciary shall be jointly and severally liable *under subparagraph (A)* [5 U.S.C. § 8477(e)(1)(A)] for a breach of fiduciary

---

[5] Plaintiffs contend that the Board has not addressed plaintiffs' argument that the Board breached its fiduciary duty by failing to defray unreasonable expenses for Accenture's and Alight's services. Pl. Opp. at 51-52. But the question of whether the Board breached its fiduciary duty with respect to fees hinges on the question of whether Accenture and Alight mismanaged the TSP and also whether the Board failed to monitor them properly. In other words, if there was no mismanagement and no failure to monitor properly, then there would be no basis for arguing that the fees were exorbitant. *Cf. Wildman v. Am. Century Servs., LLC*, 362 F. Supp. 3d 685, 708 (W.D. Mo. 2019) ("[F]ees, like performance, cannot be analyzed in a vacuum."). And since plaintiffs have failed to state a claim that the Board failed to monitor properly, they have also failed to state a claim that the Board failed to defray unreasonable costs.

duty under subsection (b) by another fiduciary only if" certain conditions are met.  5 U.S.C. § 8477(e)(1)(D) (emphasis added).

However, the only enforcement provision in FERSA that cross-references the liability created under subparagraph (A) authorizes suit to be brought exclusively by the Secretary of Labor.  *See* 5 U.S.C. § 8477(e)(3)(A)(i) ("A civil action may be brought . . . by the Secretary of Labor against any fiduciary other than a Member of the Board or Executive Director of the Board—(i) to determine and enforce a liability under [5 U.S.C. § 8477(e)](1)(A) . . . .").  Thus, joint and several liability under subparagraph (A), 5 U.S.C. § 8477(e)(1)(A), can only arise pursuant to a suit by the Secretary.  And since 5 U.S.C. § 8477(e)(3)(A)(i) explicitly forbids enforcement by the Secretary against "a Member of the Board or the Executive Director," the joint and several liability "under subparagraph (A) for a breach of fiduciary duty under subsection (b) by another fiduciary," 5 U.S.C. § 8477(e)(1)(D), does not extend to Members of the Board or the Executive Director.  Thus, the Board cannot be held jointly and severally liable for alleged breaches by Accenture and Alight of their fiduciary duties.

Even if the Board could be held jointly and severally liable, plaintiffs have failed to allege any facts showing that the Board "participated knowingly" in alleged breaches by Accenture and Alight, "enabled" them, or failed "to make reasonable efforts under the circumstances to remedy" any alleged breaches.  *See* 5 U.S.C. § 8477(b) (emphasis added); *see* Fed. Def. Memo. at 33-35.  Contrary to plaintiffs' claim, Pl. Opp. at 47-48, the mere fact that the Board might have had knowledge of Accenture's and Alight's activities does not plausibly permit the inference that it participated in, concealed, enabled, or made no attempt to remedy any problems with the TSP system.  Plaintiffs' claim of joint and several liability against the Board should therefore be dismissed.

**CONCLUSION**

For the foregoing reasons, Count Two of the Complaint and all claims against the Board should be dismissed.

Dated: Feb. 8, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

CHRISTOPHER HALL
EMILY B. NESTLER
Assistant Directors

*/s/ Lisa A. Olson*
LISA A. OLSON
Senior Trial Counsel
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W., Room 12200
Washington, D.C. 20005
Telephone: (202) 514-5633
E-mail: lisa.olson@usdoj.gov
*Counsel for FRTIB Defendants*